**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PAUL C. WILLIAMS,

                 Plaintiff,

                 v.

RICHARD BOSLEY *et al.*,

                 Defendants.

Civil Action No. 18-13092 (ZNQ) (TJB)

**MEMORANDUM OPINION**

**QURAISHI, District Judge**

        This matter comes before the Court upon Defendants Richard Bosley ("Bosley"), Theodore Kucowski ("Kucowski"), Trevor Crowley ("Crowley"), Kevin Chesney ("Chesney"), and Edward Travisano's ("Travisano") (collectively "Defendants") Motion for Summary Judgment. (ECF No. 61.) Pro Se Plaintiff Paul C. Williams ("Plaintiff") opposed (ECF No. 64), and Defendants replied (ECF No. 65). Plaintiff also filed a permitted sur-reply. (ECF No. 69.) After consideration of the parties' submissions, the Court decides Defendants' motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, Defendants' Motion for Summary Judgment is granted in part and denied in part.

I.    **BACKGROUND**[1]

   A.    **Factual Background**

   Plaintiff is a professional photographer and videographer who covers breaking news events for the press. (Compl. ¶¶ 18-19.) Defendants are all police officers with the Jackson Township Police Department. (*Id.* ¶¶ 12-16.)

   On June 27, 2018, Plaintiff received a call from a newspaper that a motor vehicle accident had occurred. (*Id.* ¶¶ 22-23.) The newspaper asked Plaintiff to capture images of the scene for submission to the newspaper. (*Id.* ¶ 23.) Plaintiff accepted the request and drove to the scene of the motor vehicle accident to take photographs. (*Id.* ¶¶ 7, 23, 24.) Plaintiff alleges that when he arrived, "law enforcement had positioned police vehicles in the middle of the roadways . . . so as to close parts of [the road] from vehicle traffic." (*Id.* ¶ 25.) Plaintiff parked his car and displayed a press credential around his neck.[2] (*Id.* ¶ 26; DSUF ¶ 7; PRDSUF ¶ 7.) Plaintiff then began walking towards the scene of the accident. (Compl. ¶ 27, 30.[3])

   Once the accident came into view, Plaintiff observed "several crashed vehicles" and "several uniformed persons that appeared to be . . . standing next to and over something, or someone, on the ground." (*Id.* ¶ 30.) Plaintiff alleges that he continued to walk toward the accident,

_____

[1] Plaintiff disagrees with most of Defendants' assertions in Defendants' Statement of Undisputed Facts. (*See generally* Defs.' Statement of Undisputed Facts ("DSUF"), ECF No. 61-3; Pl.'s Response to Defs.' Statement of Undisputed Facts ("PRDSUF"), ECF No. 64-1.) Plaintiff, however, offers no Statement of Undisputed Facts of his own. As such, for purposes of contextualizing the instant motion, the Court will use Plaintiff's Complaint to provide a factual background because Plaintiff alleged such facts occurred and Defendants' rely on Plaintiff's allegations in his Complaint for several undisputed facts. (Compl., ECF No. 1; DSUF ¶¶ 1-17.) The Court will also cite to Defendants' Statement of Undisputed Facts and Plaintiff's Response to those facts where the parties are in agreement as to a particular fact. All contested, material facts, however, will be discussed in this Opinion's Discussion section where applicable.
[2] Plaintiff's press credential was given to him by the New Jersey Press Association ("NJPA"). (Compl. ¶ 26; DSUF ¶ 7; PRDSUF ¶ 7.)

but there was no sidewalk next to the road, and as such, "he walked. . . on the grassy lawn of a property at 64 South Hope Chapel Road." (*Id.* ¶ 32.) While on the property, Plaintiff captured images of the scene. (*Id.* ¶ 33.)

Shortly thereafter, Plaintiff alleges Bosley approached Plaintiff and demanded that he stop taking pictures. (*See id.* ¶¶ 33, 34.) Plaintiff responded, "don't start with me guys" and explained that he is a news photographer. (*Id.* ¶ 36; DSUF ¶ 6; PRDSUF ¶ 6.) Plaintiff then alleges that Bosley was joined by at least one other officer and that Plaintiff was again asked to leave the area. (Compl. ¶ 37.) Plaintiff replied that he was on private property, suggesting that he did not have to leave the area. (*See id.* ¶ 38.) In response to Plaintiff's assertion, Plaintiff alleges, Chesney asked Plaintiff if he lived at 64 South Hope Chapel Road, the property containing the grassy lawn on which Plaintiff was standing. (*Id.* ¶¶ 32, 39.) Plaintiff advised Chesney that he did not. (*Id.* ¶ 40.) Chesney then proceeded towards the residence located at 64 South Hope Chapel Road and asked an individual within the home whether Plaintiff had permission to be on the lawn. (*Id.* ¶ 41.) Plaintiff alleges that the individual hesitantly stated that Plaintiff did not have permission to be on the lawn. (*Id.* ¶ 43.)

Chesney then told Plaintiff he was trespassing and began physically escorting Plaintiff off the property. (*Id.* ¶ 45.) Bosley also grabbed Plaintiff and started walking him off the property. (*Id.* ¶ 47.) Crowley, Kucowski, and Travisano walked alongside Bosley and Chesney as they escorted Plaintiff off the residential property. (*Id.* ¶ 48; DSUF ¶ 11; PRDSUF ¶ 11.) Plaintiff alleges he

---

[3] Plaintiff argues that Defendants' assertion that Plaintiff was walking "toward the crash" suggests Plaintiff was walking directly "to and upon the hub of the crash in the middle of the road" which is a mischaracterization of his allegation that he walked "parallel to the roadway." (DSUF ¶ 5; PRDSUMF ¶ 5; *but see* Compl. ¶ 30 (alleging "[a]s plaintiff continued to walk toward the crash . . . .") The Court does not take Defendants' assertion as anything more than a representation that Plaintiff walked to a position where he could view the accident.

recorded the incident on his cell phone. (Compl. ¶¶ 50-51.) While being escorted away, Plaintiff repeatedly said that he was not trespassing and was not physically resisting. (*Id.* ¶ 49; DSUF ¶ 12; PRDSUF ¶ 12.) Once off the property, Bosley and Chesney released their grips on Plaintiff's arm. (Compl. ¶ 51; DSUMF ¶ 13; PRDSUMF ¶ 13.) At that time, Chesney, Crowley, Kucowski, and Travisano all walked away. (Compl. ¶ 53.)

Bosley, however, placed his hands on Plaintiff's chest and pushed him back several times. (*Id.*) Plaintiff alleges that he simply removed Bosley's hand from his chest, at which point, Bosley yelled "[y]ou just fucking hit me" and grabbed Plaintiff, pulled him face forward to the ground, and began striking Plaintiff with fists and knees. (*Id.* ¶ 54.) Thereafter, Plaintiff asserts, Chesney, Crowley, Kucowski, and Travisano helped Bosley push Plaintiff's face into the ground while the group cursed at him. (*Id.* ¶ 58.) Plaintiff further asserts that Defendants "violently handcuff[ed] his wrists and squeez[ed] the handcuffs so tightly that extreme pain was felt in the area of his wrists." (*Id.* ¶ 58.) Plaintiff maintains that he suffered pain in his knees as a result of the arrest, which required medical attention. (*Id.* ¶¶ 58, 59, 63.)

After Plaintiff was restrained, he was escorted to a police vehicle while, Plaintiff alleges, Bosley "gathered up [Plaintiff's] camera and cell phone." (*Id.* ¶ 60.) Plaintiff further alleges that Bosley appeared to "be operating or attempting to operate" Plaintiff's cell phone. (*Id.* ¶ 61.)

Eventually, medical personnel arrived, and Plaintiff was taken to the hospital. (*Id.* ¶¶ 66-67.) Upon release from the hospital, Plaintiff was brought to the Jackson Township Police Department and processed. (*Id.* ¶ 67.) Plaintiff was ultimately charged by Bosley with three counts: (1) Obstruction of the Administration of Law, in violation of N.J. Stat. Ann. 2C:29-1(a); (2) Aggravated Assault in violation of N.J. Stat. Ann. 2C:12-1(b)(5)(a); and (3) resisting arrest, in violation of N.J. Stat. Ann. 2C:29-2(A)(1). (*Id.*; DSUF ¶ 17; PRDSUF ¶ 17.)

### B.        Procedural Background

On August 22, 2018, Plaintiff filed the current Complaint against Defendants alleging twenty-eight counts under the United States and New Jersey Constitutions. (*See generally* Compl.) Defendants answered the Complaint (ECF No. 8), and after attempts to settle this matter were unsuccessful (ECF No. 36), Defendants filed the instant motion after fact discovery concluded (ECF Nos. 50, 61).

Plaintiff maintains that each of his twenty-eight claims serve a unique and separate purpose. (Pl.'s Opp'n Br. 47-54, ECF No. 64.) Upon consideration of Plaintiff's Complaint and briefing, however, the Court finds that Plaintiff states sixteen cognizable claims within eight clearly-defined subgroups[4]: 1) False arrest claims under federal and state law ("False Arrest Claims"); 2) Malicious prosecution claims under federal and state law ("Malicious Prosecution Claims"); 3) First Amendment right-to-record claims under federal and state law ("Right-to-Record Claims"); 4) First Amendment retaliation claims under federal and state law ("Retaliation Claims"); 5) First Amendment freedom-of-the-press claims under federal and state law ("Press Claims"); 6) excessive force claims under federal and state law ("Excessive Force Claims"); 7) unreasonable seizure claims under federal and state law ("Seizure Claims"); and 8) unreasonable search claims under federal and state law ("Search Claims"). Accordingly, the Court construes Plaintiff's Complaint to bring the above sixteen claims and interprets Defendants' Motion for Summary Judgment to be brought against the eight subgroups outlined.

---

[4] The Court interprets Plaintiff's U.S. Constitution claims to be brought pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983") and Plaintiff's New Jersey Constitution claims to be brought pursuant to the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1 *et seq.* ("CRA").

## II.    <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

6

necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III.   DISCUSSION

### A.      False Arrest and Malicious Prosecution Claims

Defendants' Motion for Summary Judgment on Plaintiff's False Arrest and Malicious Prosecution Claims[5] is granted. Importantly, Plaintiff appears to acknowledge that his False Arrest and Malicious Prosecution counts are "no longer viable." (Pl.'s Opp'n Br. 89.) As such, the Court only briefly assesses these claims.

"In order to maintain . . . false imprisonment, false arrest, and[/or] malicious prosecution claims, [a p]laintiff must show that he was seized, arrested, and prosecuted without probable cause." *Torres v. Borough of Barrington*, Civ. No. 16-6134, 2017 WL 3189448, at *3 (D.N.J. July 27, 2017); *see also Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) ("False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'"); *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)

---

[5] Plaintiff's Counts Twenty (federal) and Twenty-Six (state) relate to False Arrest, and Plaintiff's Counts Twenty-One (federal) and Twenty-Seven (state) relate to malicious prosecution. (Compl. ¶¶ 198-207, 232-41.)

("To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was *made without probable cause*" (emphasis added)); *Johnson v. Bingnear*, 441 F. App'x 848, 851 (3d Cir. 2011) ("In order to prevail on a Constitutional claim of malicious prosecution, a plaintiff must demonstrate that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was *initiated without probable cause*; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." (emphasis added)); *Coleman v. City of Long Branch*, Civ. No. 15-7314, 2018 WL 4027033, at *5 (finding "to prevail on a claim for false imprisonment, a plaintiff must show: (1) that he or she was detained; and (2) that the detention was unlawful." (internal quotation marks and citation omitted)). Importantly, a guilty plea to a crime "establishes that . . . officers had probable cause to arrest" a § 1983 plaintiff for that crime. *Fields v. City of Pittsburgh*, 714 F. App'x 137, 142 (3d Cir. 2017).

Here, Plaintiff acknowledges he pled guilty to a crime that resulted in his arrest, and therefore, probable cause existed for his arrest. (Defs.' Mot. Summary J., Ex. M; Pl.'s Opp'n Br. 91.) As such, Plaintiff cannot maintain false arrest, false imprisonment, or malicious prosecution claims under § 1983 as a matter of law.

As for Plaintiff's CRA claims, finding in Plaintiff's favor on either his false arrest or malicious prosecution claims would run afoul of Supreme Court precedent, and thus, fail as a matter of law. *See Heck v. Humphrey*, 512 U.S. 477, 486 (1994).[6] In *Heck*, the Supreme Court

---

[6] Significantly, New Jersey courts apply *Heck* to claims under the CRA. *Obchinetz v. Maple Shade Township*, Civ. No. 4289-13T4, 2015 WL 3869711, at *4 (N.J. Super. App. Div. June 25, 2015) (finding that "the CRA is patterned upon Section 1983" and applying *Heck* under New Jersey state law).

found that a false arrest, false imprisonment, or malicious prosecution claim must fail if brought by a plaintiff who pled guilty to such crime unless the plaintiff's conviction has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus. *See id.* Here, Plaintiff's conviction has not been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus. (*See* Pl.'s Opp'n Br. 89-91.) As such, "[a] finding in favor of Plaintiff on his false arrest[, false imprisonment,] and[/or] malicious prosecution claims would impermissibly undermine his guilty plea," running afoul of *Heck*. *Torres*, 2017 WL 3189448, at *4 (collecting cases); *Fields*, 714 F. App'x at 141-42 (finding that were the court to credit plaintiff's assertion that no probable cause existed for his arrest, though he later pled guilty to the crime, such ruling would imply the invalidity of the plaintiff's conviction and run afoul of *Heck*).

Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's False Arrest and Malicious Prosecution Claims is granted as to both federal and state claims.

### B.    First Amendment Claims

As an initial matter, the Court must address Plaintiff's assertion that a legal distinction exists between "Plaintiff's capacity as an individual person and as a member of the press." (Pl.'s Opp'n Br. 48 (emphasis omitted).) Such assertion is significant because Plaintiff brings several causes of action solely in his capacity as a member of the press but arising from the same set of facts set forth in in his other First Amendment claims, brought in his alleged capacity as an individual. (Compl. ¶¶ 119-38, 159-78.) Plaintiff provides the Court with no legal justification for his conclusion that his First Amendment claims can be brought in separate capacities. (*See generally* Compl.; Pl's Opp'n Br.; Pl.'s Sur-Reply Br., ECF No. 69.) The Court also cannot find any independent legal basis for Plaintiff's separate capacities proposition. Importantly, there is no need for Plaintiff to plead his First Amendment claims in two separate capacities because Plaintiff's rights, both as an individual and a member of the press, are commensurate. In an

abundance of caution given Plaintiff's pro se status, the Court interprets Plaintiff's claims brought in his capacity as a member of the press as a single, additional § 1983 claim and CRA claim alleging that Defendants violated the freedom of the press to gather news by prohibiting Plaintiff from photographing the accident. *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972).

As for Plaintiff's allegations that Defendants deprived him of his First Amendment Rights in his individual capacity, he alleges three theories: interference, retaliation, and denial. (Compl. ¶¶ 99-178.) After considering Plaintiff's Complaint and the parties' briefing, the Court interprets Plaintiff's "interference" claims as § 1983 claims alleging that Defendants violated his constitutional right to record, a right outlined by the Third Circuit in *Fields v. City of Philadelphia*. (Pl.'s Opp'n Br. 56; *see also Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017).) The Court, however, can find no separate basis for Plaintiff's alleged "denial" claims that may differ in substance from Plaintiff's right-to-record claims. (Compl. ¶¶ 104-08, 124-28, 144-48, 164-68.) Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's "denial" claims, Counts Two, Six, Ten, and Fourteen, is granted because Plaintiff's "denial" claims are duplicative of Plaintiff's right-to-record claims.

In sum, the Court interprets Plaintiff's Complaint as asserting three sets of First Amendment claims under federal and state law: right-to-record claims,[7] retaliation claims,[8] and Press Claims.[9] Defendants move for summary judgment on each set of claims.[10]

### *1.* *Right-to-Record Claims*[11]

#### *a)* **Federal Right-to-Record Claim**

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the

---

[7] Plaintiff brings two counts for violation of his right to record: Count One (federal) and Count Nine (state). (Compl. ¶¶ 99-103, 139-48.)

[8] Plaintiff brings four counts for retaliation under the First Amendment: Counts Three and Four (federal) and Counts Eleven and Twelve (state). (Compl. ¶¶ 109-18, 149-58.)

[9] Plaintiff brings six counts for violation of freedom of the press to gather news under the First Amendment: Counts Five, Seven, and Eight (federal), and Counts Thirteen, Fifteen, and Sixteen. (state). (Compl. ¶¶ 119-23, 129-39, 159-63, 169-78.) The Court notes that Count Five is brought under the New Jersey Constitution, but Plaintiff's briefing and its location in the Complaint suggest it was intended to be brought under the United States Constitution. (*See id.* ¶¶ 119-23.) The Court, therefore, interprets Count Five as being brought under the United States Constitution.

[10] Plaintiff expresses concern that Defendants failed to properly move for Summary Judgment because they did not identify which Counts specifically they were moving against. (Pl.'s Opp'n Br. 44-45.) The Court, however, reads Defendants' Motion for Summary Judgment as moving against all Counts in subdivided groups. (*See generally* Defs.' Moving Br.) Even if Defendants were not moving against all Counts, the Court can weigh Plaintiff's claims *sua sponte* on Defendants' Motion for Summary Judgment because Plaintiff briefed all of his claims for the Court. *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004) ("It has long been established that, under the right circumstances, district courts are entitled to enter summary judgment sua sponte. . . so long as the losing party was on notice that she had to come forward with all of her evidence.") As such, whether or not Defendants appropriately addressed all twenty-eight claims in Plaintiff's Complaint, the Court will evaluate all claims on summary judgment.

[11] Importantly, the CRA "is [generally] interpreted analogously to [Section] 1983." *Martin v. Unknown U.S. Marshals*, 965 F.Supp.2d 502, 548 (D.N.J.2013) (citation omitted). Where it is unclear whether First Amendment rights under the United States Constitution and First Amendment rights under the New Jersey Constitution differ, the Court considers Plaintiff's §1983 and CRA claims separately.

Constitution or laws of the United States." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). "This section does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In pertinent part, the First Amendment states that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. CONST. amend. I. To state a First Amendment claim under § 1983, therefore, a plaintiff must show that the defendants, through conduct sanctioned under the color of state law, deprived him of his First Amendment Rights. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997).

The Third Circuit has interpreted the First Amendment's right of access to information as also granting the public the "right to record—photograph, film, or audio record—police officers conducting official police activity in public areas." *Fields*, 862 F.3d at 360. This right, however, "is not absolute." *Id.* "It is subject to reasonable time, place, and manner restrictions." *Id.* (citations omitted). The *Fields* court also recognized that there may be other countervailing concerns that might render an individual's right to record police activity unprotected.  *See id.* The Court does not read *Fields'* interpretation of the First Amendment right to record police activity in *public areas* as granting a plaintiff the right to record that activity from a position where a plaintiff does not have a legal right to be present. *See id.* (emphasis added); *see also Whiteland Woods, L.P. v.*

*Township of West Whiteland*, 193 F.3d 177 (3d Cir. 1999) (distinguishing between a right of access to a township planning commission meeting and the right to videotape its proceedings).[12]

The Court finds that Plaintiff cannot sustain a claim that his right to record was violated and, therefore, Defendants' Motion for Summary Judgment on Plaintiff's right-to-record claims is granted. Critically, there is no genuine issue of material fact as to whether Plaintiff was trespassing on 64 South Hope Chapel Road while taking pictures of the accident.[13] Defendants provide evidence that Plaintiff did not have permission to be on the lawn of 64 South Hope Chapel Road. (Defs.' Mot. for Summary J. Ex. E, ECF No. 61-8 (containing Crowley's incident report stating that as Defendants "were speaking to [Plaintiff], the homeowner from 64 S[outh] Hope Chapel Road came outside . . . [and] Chesney asked [the owner if Plaintiff] had permission to be on the property . . . [and that] [t]he homeowner replied that he did not, and he did [not] know" Plaintiff); *see also* N.J. Rev. Stat. § 2C:18-3 (2013) (containing the elements for criminal trespass in New Jersey).) Plaintiff also acknowledges that he was taking pictures from private property, does not dispute that 64 South Hope Chapel Road is not his property, and offers no evidence to suggest he had permission to be on the property. (Pl.'s Decl. ¶¶ 26, 33-39, ECF No. 64-2; Pl.'s Opp'n Br. 64.)

---

[12] Persuasive authority supports this Court's interpretation of the *Fields* holding. *See Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1146 (10th Cir. 2020) (*a fortiori*, finding that "[n]othing in the Constitution requires the Government [to] freely . . . grant access to all who wish to exercise their right to free speech on every type of public property without regard to the nature of the property" and that nonpublic forums do not necessarily confer the same First Amendment liberties); *see also* Andrew J. Bruck, Attorney General Law Enforcement Directive, No. 2021-11 (2021) (interpreting *Fields* to mean that "[a] member of the public who is present but not taking part in a situation or event . . . has the right to witness, observe, photograph, audio and video record, comment on, or complain about law enforcement officers conducting official duties in public or in private places . . . which the bystander has a *legal right to be present*" (emphasis added)).

[13] Plaintiff's trespass is addressed more fully in Section (C)(i)(a) of this Opinion's Discussion section.

Because Plaintiff was not in a lawful position to take pictures, Plaintiff had no right to record police activity from the lawn of 64 South Hope Chapel Road.

Moreover, Defendants submitted evidence that Chesney told Plaintiff to cease taking pictures and to leave the scene, but that he could take pictures behind the patrol vehicles denoting the perimeter of the accident, about "100 yards north of the crash scene." (Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.) In this way, Defendants acknowledged Plaintiff's right to record, just not on private property which he did not have permission to enter. As such, there is no genuine issue of material fact as to whether Defendants' violated Plaintiff's right to record. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 right-to-record claim is granted.

### b)      State Right-to-Record Claim

The same can be said of Plaintiff's New Jersey right to record claims. Importantly, "New Jersey courts . . . analyze a plaintiff's [CRA] claims through the lens of Section 1983." *Alfaro v. Rempusheski*, Civ. No. 21-2271, 2021 WL 5995758, *2 (D.N.J. Dec. 10, 2021) (citations omitted). In fact, when the New Jersey State Legislature enacted the CRA, it "intended it as an analogue to [§ 1983] and sought to incorporate existing § 1983 jurisprudence." *Baldeo v. City of Paterson*, Civ. No. 18-5359, 2019 WL 277600, at *10 (D.N.J. Jan. 18, 2019) (citations omitted). As such, "[c]ourts have repeatedly construed the [CRA] in terms nearly identical to its federal counterpart: Section 1983." *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) (citation omitted).

In this way, the Court finds that for the same reasons Plaintiff's § 1983 right-to-record claim must fail, so too must Plaintiff's CRA right-to-record claim fail. Accordingly, Defendants' Motion for Summary Judgement as to Plaintiff's right-to-record claim under the CRA is also granted.

14

2.     *Retaliation Claims*

Plaintiff's First Amendment retaliation claims cannot be sustained as a matter of law because there is no genuine issue of material fact as to whether Plaintiff was engaged in a protected activity. To establish a claim for First Amendment retaliation a plaintiff must demonstrate "that: (1) []he engaged in protected activity; (2) the government responded with retaliation; and (3) the protected activity was the cause of the retaliation." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted).

Plaintiff alleges two theories of First Amendment retaliation: (1) that he was retaliated against where he captured images and then was arrested; and (2) that he was retaliated against where he captured images and his phone and camera were taken from him in retaliation. (Compl. ¶¶ 109-18, 149-58.) Both theories fail because, as a matter of law and for the reasons identified above, Plaintiff has not demonstrated that he was engaged in a protected activity.

Importantly, the only First Amendment right that Plaintiff substantively identifies being violated, in both of his theories of retaliation, is his right to record as established by *Fields*. (Pl.'s Opp'n Br. 55-65.) Earlier in this Opinion, this Court interpreted *Fields* to not extend the right to record police officers in public to include a right to record police officers from private property which an individual does not have permission to enter. *See Fields*, 862 F.3d at 360. Therefore, Plaintiff cannot establish that he was engaged in an activity protected under the First Amendment while recording the police, and because First Amendment retaliation claims are parallel under Section 1983 and the CRA, Defendants' Motion for Summary Judgment as to all of Plaintiff's retaliation claims is granted. *See Southward v. Elizabeth Bd. of Educ.*, No. 15-3699, 2017 WL 111924, at *11 n.8 (D.N.J. Jan. 11, 2017) (construing First Amendment retaliation claims brought under Section 1983 and the CRA as being parallel to one another).

3.    *Press Claims*

As a general matter, both the United States Constitution and New Jersey Constitution recognize a right to engage in news gathering. *Ramos v. Flowers*, 56 A.3d 869, 882 (N.J. Super Ct. App. Div. 2012). As the United States Supreme Court has characterized the New Jersey Constitution's free press clauses as "more sweeping in scope than the language of the First Amendment[,]" this Court will consider Plaintiff's federal and state press claims separately. *Id.* at 876-77.

a)    **Federal Press Claims**

"The Supreme Court has recognized that the First Amendment—in addition to protecting freedom of speech and the press—must also contain protections for some news-gathering activity." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 98 (3d Cir. 2013) (citing *Branzburg*, 408 U.S. at 681). "Yet, the Supreme Court has held, time and again, that this First Amendment right of access to information is qualified and subject to limitations." *Id.* Most significantly, the Supreme Court has held that "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg*, 408 U.S. at 684.

More specifically, the Court in *Branzburg* found that "the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability." *Branzburg*, 408 U.S. at 682; *see also* James A. Albert, *The Liability of the Press for Trespass and Invasion of Privacy in Gathering the News*, 45 N.Y.U.L.R. 331, 340 (2002) (interpreting the Supreme Court's opinion in *Branzburg* to mean that "the press can be subjected to liability for trespass and invasion of privacy even if it is attempting to unearth or gather news when committing those torts"). In other words, the freedom of the press does not immunize a member of the press from otherwise unlawful acts. *See Branzburg*, 408 U.S.

at 691 (finding that although the First Amendment protects "news gathering" activities, it does not

"confer[] a license on either the reporter or his news sources to violate valid criminal laws.")

As the Court previously established, there is no genuine issue of material fact as to whether

Plaintiff was taking photographs for use in the news from a private property that he did not have

permission to enter. (Pl.'s Decl. ¶¶ 26, 33-39; Pl.'s Opp'n Br. 64; *see also* Compl. ¶ 14.) Plaintiff,

simply by virtue of his press credential, does not have an unqualified right to gather news while

trespassing on private property. *See Branzburg*, 408 U.S. at 682. As such, Plaintiff cannot sustain

a § 1983 claim for violation of his right to gather the news as a member of the press.

### b) State Press Claims

Like the United States Constitution, the New Jersey Constitution has been interpreted to

protect "the right to engage in news gathering." *Ramos*, 429 N.J. Super. at 882. Two provisions of

the New Jersey State Constitution, however, have been interpreted by the New Jersey Supreme

Court to broaden First Amendment protections for the press:

> [1] Every person may freely speak, write and publish his sentiments
> on all subjects, being responsible for the abuse of that right. No law
> shall be passed to restrain or abridge the liberty of speech or of the
> press . . . . (N.J. CONST. (1947), Art. I, par. 6.)
>
> [2] The people have the right freely to assemble together, to consult
> for the common good, to make known their opinions to their
> representatives, and to petition for redress of grievances. (N.J.
> CONST. (1947), Art. I, par. 18.)

*See State v. Schmid*, 423 A.2d 615, 626-27 (N.J. 1980); *see also Ramos*, 56 A.3d at 876.

To support his claim that Defendants violated his First Amendment rights under the New

Jersey Constitution, Plaintiff relies heavily on a New Jersey Appellate Division decision, *Ramos*

*v. Flowers*. 56 A.3d at 876. In *Ramos*, the court found that "the process of preparing . . . a

documentary is a form of news gathering . . . protected by the First Amendment to the United

States Constitution and by the New Jersey Constitution." *Id.* at 877. Importantly, however, nowhere in *Ramos* does the court suggest that the act of filming a documentary is protected even if the videographer is filming on private property without permission. *See id.* (identifying one instance where the plaintiff was filming on private property, but where the plaintiff was there for a birthday party, and the *Ramos* court does not suggest that the plaintiff was impermissibly on the private property). Plaintiff, in making the argument that the New Jersey Constitution protects his right to gather news even while impermissibly on private property, simply seeks to stretch the law too far.

Perhaps significantly, the *Ramos* court relies on *Branzburg* to support the proposition that "[t]he First Amendment has . . . been interpreted to protect the media's right to gather news." *Id.* at 876 (citing *Branzburg*, 408 U.S. at 681). As the Court has already observed, the *Branzburg* Court discussed with detail that while the First Amendment protects "news gathering" activities, it does not "confer[] a license on either the reporter or his news sources to violate valid criminal laws." *Branzburg*, 408 U.S. at 691. The Court has every reason to believe, therefore, that in citing *Branzburg*, it was not the intention of the *Ramos* court to stand for the proposition that the right to gather news excuses entry onto private property without the permission of a landowner. This Court certainly declines to interpret *Ramos* as making such a holding.

In the absence of any case law or persuasive authority suggesting that the New Jersey Constitution contemplates that the freedom to gather news provides the press with a privilege to enter private property without permission, the Court grants summary judgment for Defendants on all of Plaintiff's Press Claims.

C.       **Excessive Force and Search and Seizure Claims**[14]

1.       *Excessive Force*[15]

Genuine issues of material fact remain as to whether Defendants' used excessive force when arresting Plaintiff. In moving for summary judgment, Defendants' argue: (1) that Plaintiff failed to demonstrate that Defendants' utilization of force in arresting Plaintiff was excessive; and (2) that Defendants are entitled to qualified immunity on Plaintiff's excessive force claims. (Defs.' Moving Br. 25, 27.) The Court finds that Defendants are not entitled to qualified immunity and that a genuine issue of material fact exists as to whether Defendants utilized excessive force.

"[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 F.3d at 396 (internal quotation marks and citation omitted). Courts evaluate the reasonableness "of a particular use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Green v. N.J. State Police*,

---

[14] In the context of the Fourth Amendment, the CRA "is interpreted analogously to [Section] 1983." *Martin*, F. Supp. 2d at 548 (citation omitted). As such, federal and state claims brought under Section 1983 and the CRA respectively, are considered collectively in this section, as all claims in this section derive from the Fourth Amendment.

[15] Plaintiff brings four counts for excessive force: Counts Eighteen and Nineteen (federal) and Counts Twenty-Four and Twenty-Five (state). Plaintiff refers to one set of Counts, Counts Eighteen and Twenty-Four, as "unreasonable use of force" claims. The Court, however, can find no separate basis for Plaintiff's alleged "unreasonable use of force" claims that may differ in substance from Plaintiff's excessive force claims. Therefore, Defendants' Motion for Summary Judgment as to Counts Eighteen and Twenty-Four is granted because Plaintiff's "unreasonable use of force" claims are duplicative of Plaintiff's excessive force claims.

246 F. App'x 158, 161 (3d Cir. 2007) (internal quotation marks, emphasis, and citation omitted). The Supreme Court has found that when courts consider excessive force claims, they should consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 F.3d at 396.

Plaintiff maintains that "what happened from the point where Defendants proceeded to forcibly remove Plaintiff from [the lawn] is largely disputed." (Pl.'s Opp'n Br. 75.) The Court agrees.

By Plaintiff's sworn account, Bosley and Chesney released Plaintiff after escorting him to a location where he could lawfully take photographs, and then Plaintiff turned around to face the crash. (*See* Pl.'s Decl. ¶ 48.) Plaintiff maintains that at that point, Chesney, Crowley, Kucowksi, and Travisano began walking away, but Bosley stayed behind. (*Id.* ¶ 49.) According to Plaintiff, without Plaintiff ever taking a step towards the scene, Bosley pushed Plaintiff back several times, causing Plaintiff to feel like he may fall. (*Id.* ¶¶ 48-49.) Plaintiff removed Bosley's hand from his chest area, admitting that he used some degree of force in doing so, and stated "something to the effect of 'don't put your fucking hands on me.'" (*Id.* ¶ 50.)

At that point, as Plaintiff recollects, Bosley yelled "[y]ou just fucking hit me." (*Id.* ¶ 51.) Plaintiff asserts that Bosley then grabbed Plaintiff, pulled him face-forward to the ground, and began striking Plaintiff with his fists and knees throughout the head and body areas. (*Id.*) Plaintiff states that he did not offer any physical resistance, and before Bosley physically confronted him, Plaintiff maintains that Bosley gave no verbal warning for Plaintiff to comply in order to avoid Bosley's use of force.  (*Id.* ¶ 52.)

20

After Bosley's initial alleged attack, Plaintiff remembers Chesney, Crowley, Kucowski, and Travisano helping Bosley push Plaintiff's face into the ground "with their hand[s] pressed against the back of [Plaintiff's] head." (*Id.* ¶ 54.) Plaintiff maintains that Defendants were cursing at him "violently grabbing and striking [him] with fists, knees, and feet, and violently pulling [his] arms and hands behind [his] back" before handcuffing him so tightly that "extreme pain was felt in the area of [Plaintiff's] wrists." (*Id.*) During the altercation, Plaintiff felt pain in his knees due to the way Defendants were twisting his left leg while yelling "stop resisting." (*Id.*) Plaintiff consistently asserts that he was not resisting at any point during his arrest. (*Id.* ¶ 55.)

Defendants' commands that Plaintiff "stop resisting," however, made Plaintiff fearful that Defendants "were about to use deadly force," putting Plaintiff in fear of serious and significant bodily injury and death. (*Id.* ¶¶ 54, 55.) Eventually, Plaintiff was stood up, but he collapsed after feeling excruciating pain in his knee from Defendants use of force. (*Id.* ¶ 58.) Plaintiff was ultimately issued a leg brace and a set of crutches for his injury. (*Id.* ¶ 60.)

Defendants provide evidence suggesting a different series of events. First Defendants' accounts consider the crime at issue a trespass that transitioned into "Obstructing the Administration of Law; Resisting Arrest; and most egregiously Aggravated Assault against a Police Officer." (Defs.' Moving Br. 29; *see also* Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.) Defendants insist that the evidence suggests that Plaintiff was an immediate threat to the safety of the officers after he struck Bosley. (Def.'s Moving Br. 29; *see also* Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C; Defs.' Mot. for Summary J., Ex. D, ECF No. 61-7.) Defendants point to the facts that Plaintiff was verbally combative before striking Bosley, and Defendants further contend that Plaintiff refused to cooperate with Bosley's arrest. (Defs.' Moving Br. 29; Defs.' Mot. for Summary J., Ex. B; Defs.'

Mot. for Summary J., Ex. C; Defs.' Mot. for Summary J., Ex. D.) Defendants also cite the fact that Plaintiff was preaching "his benevolence and authority under the First Amendment to take photographs" as supporting their theory that Plaintiff was a threat to them. (Defs.' Moving Br. 29; Defs.' Mot. for Summary J., Ex. C.)

Bosley maintains that after Plaintiff was released outside the perimeter, "Plaintiff's anger escalated" and he screamed "don't put your fucking hands on me." (Defs.' Moving Br. 29; Defs.' Mot. for Summary J., Ex. B.) Defendants then claim that "Plaintiff swatted at . . . Bosley's arm," and that once Plaintiff was on the ground, it took five officers to hold Plaintiff's arms and legs down so that Bosley could arrest Plaintiff. (Defs.' Moving Br. 29-30; Defs.' Mot. for Summary J., Ex. B.) Bosley described Plaintiff's resistance as "trying to crawl away" while Plaintiff moved his legs rapidly. (Defs.' Mot. for Summary J., Ex. B.) Kucowski also described Plaintiff's resistance as Plaintiff "trying to crawl away" while Plaintiff rapidly moved his legs. (Defs.' Mot. for Summary J., Ex. D.) Travisano, however, described Plaintiff's resistance as Plaintiff trying to "pull away" from Travisano several times while Travisano tried to get control of Plaintiff's arm." (Defs.' Mot. for Summary J., Ex. C.)

The evidence on the record, as set out above, is rife with genuine issues of material fact as to what level of force Defendants employed and whether Defendants' use of force was required. Emblematic of the tension between Plaintiff and Defendants' accounts of Plaintiff's arrest is the parties' widespread disagreement as to whether Plaintiff resisted arrest. Such disagreement over Plaintiff's resistance is certainly a material disagreement in the context of an excessive force claim. Accordingly, unless Defendants can establish that they are entitled to qualified immunity on Plaintiff's excessive force claims, Defendants' Motion for Summary Judgment on Plaintiff's

excessive force claims will be denied. Qualified immunity on Plaintiff's excessive force claims is discussed below.

### a) Qualified Immunity from Plaintiff's Excessive Force Claims

"The doctrine of qualified immunity insulates government officials who are performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *James*, 700 F.3d at 679 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In other words, "[w]hen analyzing a qualified immunity claim, [courts] consider [two prongs:] (1) whether the plaintiff sufficiently alleged the violation of a constitutional right; and (2) whether the right was 'clearly established' at the time of the official's conduct." *Dennis v. City of Philadelphia*, 19 F.4th 279, 288 (3d Cir. 2021) (internal quotation marks and citation omitted). The first prong is not at issue here; instead, Defendants assert that Plaintiff's First Amendment right was not clearly established. (Defs.' Moving Br. 26.)

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he [or she] is doing violates that right.'" *Ashcroft v. al Kidd*, 563 U.S. 731, 741 (2011) (first, second, third, and fourth alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The contours of a right are sufficiently clear where "existing precedent [places] the statutory or constitutional question beyond debate." *Id.* (citations omitted). "Only controlling precedent in the relevant jurisdiction can place a constitutional question beyond debate." *Dennis*, 19 F.4th at 288. The Supreme Court has found that in excessive force cases, the "[u]se of force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity

unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153-54 (U.S. 2018) (internal quotation marks and citation omitted).

Generally, whether qualified immunity attaches to a police officer is a question to be decided by the court, not the jury. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Furthermore, the Supreme Court has held that qualified immunity "ordinarily should be decided . . . long before trial." *Id.* at 227. This case, however, is one such unordinary case where deciding qualified immunity at the summary judgment stage is not appropriate. *See Schneider v. Simonini*, 749 A. 2d 336, 347-48 (N.J. 2000) (struggling over what the Supreme Court meant by "ordinarily" qualified immunity should be decided before trial and outlining conflicting interpretations of this language in federal courts across the country before concluding that a genuine issue of material fact may preclude entry of qualified immunity prior to trial, but does noes not prevent a defendant from reasserting the defense). This is because this Court cannot ascertain the specific facts at issue in this case so as to meaningfully assess the applicability of qualified immunity. *See Kisela*, 138 S. Ct. at 1153-54 (finding that the "[u]se of force is an area of the law in which the result depends very much on the facts of each case").

Here, as outlined in detail above, several facts material to Plaintiff's excessive force claim remain in dispute, and as such, the Court cannot reasonably assess whether Supreme Court or Third Circuit "precedent squarely governs the specific facts at issue" in this case. *Id.* This is because, depending on which factual narrative is adopted by the factfinder, the Court's analysis of qualified immunity and what clearly established law may apply will change substantially. Importantly, the Court does not find that summary judgment in Defendants' favor as to qualified immunity is appropriate. Instead, the Court finds only that a plethora of genuine issues of material fact as to Plaintiff's Excessive Force Claims prevent the Court from determining that Defendants are entitled

24

to qualified immunity at this time. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Excessive Force Claims is denied.

### 2. *Unreasonable Search and Seizure*[16]

Plaintiff alleges three theories of illegal search and seizure: (1) that his person was "seized" when he was moved off the lawn; (2) that his cell phone was illegally seized after his arrest; and (3) that his cell phone was illegally searched after his arrest. (Pl.'s Opp'n Br. 20, 26, 32, 45-46, 74-75.) Defendants move for summary judgment on all theories arguing: (1) "Plaintiff was not "seized" in violation of his constitutional rights when he was escorted off private residential property and out of the crash investigation area"; and (2) that "Plaintiff's camera and cell phone were lawfully seized" and that "the record and Plaintiff's own pleadings do not assert that his camera and phone were unlawfully searched." (Defs.' Moving Br. 31, 41.)

#### a) **Seizure of Plaintiff's Person**[17]

"The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009) (citing U.S. CONST. amend IV). "Generally, subject only to a few well-defined exceptions, warrantless searches and seizures are per se unreasonable under the Fourth Amendment." *United States v. Williams*, 413 F.3d 347, 351 (3d Cir. 2005) (emphasis omitted) (citing *United States v. Ross*, 456 U.S. 798, 824-25 (1982)). Examples of a seizure might include: "the threatening presence of several [police] officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled." *Kaupp v. Texas*, 538

---

[16] Plaintiff brings four counts for unreasonable search or seizure: Counts Seventeen (federal) and Twenty-Three (state) relate to an alleged seizure of his person and Counts Twenty-Two (federal) and Twenty-Eight (state) related to an alleged seizure and search of Plaintiff's cell phone.

[17] In the context of the Fourth Amendment, the CRA "is interpreted analogously to [Section] 1983." *Martin*, 965 F.Supp.2d at 548 (citation omitted).

U.S. 626, 629 (2003) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Importantly if a police officer has probable cause to believe that an offense has been or is being committed, a seizure is not unconstitutional. *See Dunaway v. New York*, 442 U.S. 200, 208-09 (1979). Here, even if the Court assumes that Plaintiff was seized when Bosley and Crowley grabbed Plaintiff's arm to escort him off the private property on which he was trespassing, there is no genuine issue of material fact as to whether his seizure was constitutional. *See Williams*, 413 F.3d at 351 (finding that a seizure occurs where an officer applies "physical force to the person being seized, or . . . the person submit[s] to an assertion of police authority").)

As was mentioned by the Court earlier in this Opinion, there is no genuine issue of material fact as to whether Plaintiff was trespassing while he took pictures of the accident. Instead, the only question remaining for the Court is whether Defendants had probable cause to believe Plaintiff was trespassing, so that they could lawfully seize Plaintiff and move him off the property.

"Probable cause exists when the objective facts and circumstances known to the police at the time are such that a reasonable person would believe that the person to be charged has committed an offense." *Jones v. City of Vineland*, Civ. No. 12-6212, 2015 WL 4506928, *3 (D.N.J. July 23, 2015) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).[18] The probable cause analysis involves a factual, common-sense inquiry of the totality of the circumstances. *Id.* (citation omitted).

While Defendants did not charge Plaintiff with a trespassing offense, they had a reasonable belief that Plaintiff was criminally trespassing on private property before they grabbed Plaintiff and moved him off the lawn at 64 South Hope Chapel Road. *See* N.J. Rev. Stat. § 2C:18-3 (2013)

---

[18] "[T]he standard for probable cause is identical under federal and New Jersey law." *Martin*, 965 F.Supp.2d at 548 (citing *Schirmer v. Penkethman*, Civ. No. 10–1444, 2012 WL 6738757, at *8 (D.N.J. Dec. 31, 2012)).

(containing the elements or criminal trespass in New Jersey).) The New Jersey Code of Criminal

Justice provides in pertinent part:

> A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
> (1) Actual communication to the actor; or
>
> (2) Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or
>
> (3) Fencing or other enclosure manifestly designed to exclude intruders.

N.J. Rev. Stat. § 2C:18-3 (2013).

Defendants argue that the evidence in the record establishes: (1) "that the private residential

property had a fence in front to the property, which a reasonable officer could interpret as being

designed to exclude intruders"; (2) "Plaintiff refused to answer [Defendants] questions [as to

whether] he had authority or the owner's permission to be on the property"; (3) Chesney "spoke

with the property owner who informed [him] that the Plaintiff did not have permission to be on

the property"; (4) Chesney "informed . . . Plaintiff that he did not have permission to be on the

property"; and (5) "only after informing . . . Plaintiff that he did not have permission to be on the

private residential property was Plaintiff escorted off" the property. (Defs.' Moving Br. 33-35;

Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C; Defs.' Mot. for Summary

J., Ex. Q, ECF No. 61-20.)

In response, Plaintiff argues that the record shows that before "any inquiry of the owner of

the property about whether Plaintiff had permission to be on the property, [Chesney] had already

put his hand on Plaintiff in an attempt to escort him away." (Pl.'s Opp'n Br. 68.) Plaintiff also

argues generally that, before the inquiry to the homeowner about Plaintiff's presence, there were no facts that would lead a reasonable officer to believe Plaintiff was trespassing. (*Id.*)

Contrary to Plaintiff's contentions, no genuine issue of material fact remains as to whether Defendants had probable cause to believe Plaintiff was criminally trespassing. First, the evidence establishes that the residence had a fence around it, which a reasonable officer could conclude signified intruders were not welcome. (Defs.' Mot. for Summary J., Ex. Q.) Next, Plaintiff's own Complaint and various reports filed by Defendants all agree that Chesney and potentially Bosley demanded that Plaintiff stop taking pictures. (Compl. ¶ 37; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.) Plaintiff then said "don't start with me guys" and did not leave the scene. (Pl.'s Decl. ¶ 31; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.) After Plaintiff failed to leave the scene, Defendants again told him to leave the area. (Pl.'s Decl. ¶ 32; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.) Plaintiff then informed them that he was on private property. (Pl.'s Decl. ¶ 33; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.)

After Plaintiff made this assertion, Defendants began to reasonably question Plaintiff about whether he had a right to be on the fenced-in private property. (*See* Pl.'s Decl. ¶ 35; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C; Defs.' Mot. for Summary J., Ex. Q.) Plaintiff informed Defendants that he did not live at the property. (*See* Pl.'s Decl. ¶ 36; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.) At that point, Chesney proceeded toward the residence as an individual stepped out of the residence onto the front porch. (Pl.'s Decl. ¶¶ 36-37; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.) Chesney then pointed at Plaintiff and asked the individual if Plaintiff had permission to be on the property. (Pl.'s

Decl. ¶ 38; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.) The individual

said no. (Pl.'s Decl. ¶ 39; Defs.' Mot. for Summary J., Ex. B; Defs.' Mot. for Summary J., Ex. C.)

At the moment the individual exiting the residence located at 64 South Hope Chapel Road

told Defendants that Plaintiff did not have permission to be on the property, Defendants had

probable cause to seize Plaintiff.[19] *See* N.J. Rev. Stat. § 2C:18-3 (2013). Significantly, Plaintiff

provides no evidence to suggest that Defendants seized him before the property owner indicated

that Plaintiff did not have permission to be on his property. (Pl.'s Decl. ¶¶ 39, 40.) As such,

Defendant's seizure of Plaintiff's person was constitutional, and accordingly, Defendants' Motion

for Summary Judgment on Plaintiff's seizure of his person claims is granted.

### b)      Seizure of Plaintiff's Phone

Defendants' seizure of Plaintiff's phone and camera was also not unconstitutional. As

previously stated, "subject only to a few well-defined exceptions, warrantless searches and

seizures are per se unreasonable under the Fourth Amendment." *United States v. Williams*, 413

F.3d 347, 351 (3d Cir. 2005) (emphasis omitted) (citing *United States v. Ross*, 456 U.S. 798,

824-25 (1982)). Two exceptions to the Fourth Amendment's warrant requirement, in combination,

justified Defendants' seizure of Plaintiff's phone and camera: the search-incident-to-arrest

exception and the inventory-search exception.

The search incident to arrest exception allows an arresting officer "to search the person

arrested in order to remove any weapons that the latter might seek to use in order to resist or effect

---

[19] Plaintiff states that Chesney did not first ask the individual who stepped out of the residence "what, if any, lawful authority the person possesses in the property." (Pl.'s Decl. ¶ 38.) Such fact is not material, however, to whether Defendants had probable cause to believe Plaintiff was trespassing because the probable cause standard asks whether facts would lead a reasonable officer to conclude an offense is being committed. In this case, it was certainly reasonable for Chesney to believe that the individual walking out of the residence at 64 South Hope Chapel Road had the authority to state whether or not Plaintiff had permission to be on the property. Additionally, Plaintiff provides no facts to suggest that individual was without such authority.

his escape." *U.S. v. Shakir*, 616 F.3d 315, 317 (3d Cir. 2010) (internal quotation marks and citation omitted). "The permissible scope of a search incident to arrest includes the arrestee's person and the area within his immediate control—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969). Separately, and under the inventory search exception, "[o]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant." *United States v. Edwards*, 415 U.S. 800, 807 (1974).

Here, Bosley's Incident Report states that he "seized [Plaintiff's] Nikon D7100 digital camera and iPhone pending a possible search warrant." (Defs.' Mot. for Summary J., Ex. B.) The search that led Defendants to gather Plaintiff's phone and camera was permissible pursuant to the search-incident-to-arrest exception. *Mills v. Golden Nugget Atlantic City, LLC*, 2021 WL 6010373, at *4 (D.N.J. Dec. 20, 2021) ("[I]t is an uncontested 'right on the part of the Government . . . to search the person of the accused when [they are] legally arrested.") Moreover, once Plaintiff was lawfully arrested and in custody, all his effects in his possession, including his phone and camera, could be seized without a warrant for use in evidence under the inventory-search exception. *Edwards*, 415 U.S. at 807 (finding that at the moment of arrest, "the inspection of [an arrestee's possessions] and the holding of them for use in evidence . . . [was] reasonable and proper). For these reasons, Defendants' seizure of Plaintiff's phone and camera was constitutional, and no genuine issues of fact remain as to whether Plaintiff's phone and camera were lawfully seized.

### c)    Search of Plaintiff's Phone

In order for a search to be "reasonable" under the Fourth Amendment it "generally must be conducted pursuant to a search warrant supported by probable cause unless an exception to the warrant requirement applies." *United States v. Goldstein*, 914 F.3d 200, 202 (3d Cir. 2019).

Significantly, police officers "generally must secure a warrant before conducting" a search of a cell phone. *Riley v. California*, 573 U.S. 373, 386 (2014).

A genuine issue of material fact exists as to whether Bosley impermissibly searched Plaintiff's phone without a warrant. Plaintiff provides testimony that as he was stood up after his arrest, he "observed . . . Bosley . . . operating or attempting to operate [Plaintiff's] cell phone while walking away with it" and that Plaintiff did not see his phone again "until January of 2019." (Pl.'s Decl. ¶ 57.) Defendants provide evidence that Bosley did not search Plaintiff's phone, but instead, requested a search warrant to search the phone. (Defs.' Mot. for Summary J., Ex. B.) At this stage, however, Plaintiff's sworn assertion that he saw Bosley operating his phone is enough to establish a genuine issue of material fact under federal and state law as to whether Bosley impermissibly searched his phone. Whether Plaintiff's account is credible, is for a jury to decide.

Accordingly, Bosley's Motion for Summary Judgment against Plaintiff's unreasonable search claims under federal and state law is denied. To the extent Plaintiff brings unreasonable search allegations against the other Defendants in this matter, those claims fail as a matter of law because Plaintiff does not allege any of the other Defendants searched his phone. (*See* Pl.'s Decl. ¶ 57.)

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted as to all of Plaintiff's claims except for his Search Claims under federal and state law (Counts Twenty-Two and Twenty-Eight), and his Excessive Force Claims under federal and state law (Counts Nineteen and Twenty-Five). An appropriate Order will follow.


 Date: May 30, 2023

s/Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**